Joseph Tancredi v. Commissioner. Charles Lisi v. Commissioner.
Tancredi v. Commissioner
Docket Nos. 23099, 23103.
United States Tax Court
1951 Tax Ct. Memo LEXIS 252; 10 T.C.M. (CCH) 388; T.C.M. (RIA) 51120; April 26, 1951
*252 During the year 1944 petitioner Tancredi was the sole manager of the Happy Doll Company and petitioner Lisi was the sole manager of the Public Doll Company, the two petitioners conducting these businesses in partnership between them whereby each had a half interest in the business conducted by the other, and shared equally with the other in the profits and losses from the two businesses. In October 1944 petitioner Tancredi formed a subpartnership with his wife and four of his children for the conduct of the Happy Doll business and Lisi formed a subpartnership with his wife and four of his children for the conduct of the Public Doll business. On the facts, held: 1. Petitioner Tancredi and his wife and children did not intend to join together as bona fide partners in the present conduct of the Happy Doll Company business in 1944 and therefore their subpartnership was invalid for tax purposes in that year. 2. Petitioner Lisi and his wife and children did not intend to join together as bona fide partners in the present conduct of the Public Doll Company business in 1944 and therefore their subpartnership was invalid for tax purposes in that year. Paul J. Foley, Esq., 15 *253 Van Sicklin St., Brooklyn 23, N. Y., for the petitioners. Rigmor O. Carlsen, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The case of Joseph Tancredi, Docket No. 23099, and the case of Charles Lisi, Docket No. 23103, were consolidated for hearing by this Court. Respondent determined a deficiency of $20,534.82 in the income tax of petitioner Tancredi for the year 1944 and determined a deficiency of $20,988.27 in the income tax of petitioner Lisi for the year 1944. An issue involving business expense deductions claimed by each of the petitioners for 1944 was settled by stipulation of the parties at the hearing. It was stipulated that petitioner Tancredi and petitioner Lisi were each entitled to business expense deductions of $1,980 in 1944. Two questions remain for our determination in this proceeding: (1) Was the subpartnership formed by petitioner Tancredi, his wife, and four of his children in October 1944 for the conduct of the Happy Doll business valid for tax purposes in that year? (2) Was the subpartnership formed by petitioner Lisi, his wife, and four of his children in October 1944 for the conduct of the Public Doll business valid *254 for tax purposes in that year? Findings of Fact Petitioner Joseph Tancredi (hereinafter sometimes referred to as Tancredi) is an individual residing in Brooklyn, New York. He filed an individual income tax return for the year 1944 with the collector of internal revenue for the first district of New York. Petitioner Charles Lisi (hereinafter sometimes referred to as Lisi) is an individual residing in Englewood, New Jersey. He filed an individual income tax return for the year 1944 with the collector of internal revenue for the second district of New York. In 1944 the members of Tancredi's family consisted of his wife Maria and their children, Andrew, Charles, William, Lillian and Victoria Tancredi and Anna Anzolone. In the same year Lisi had a family consisting of his wife Carmela, and their children, Sebastian, Frank, Madeline and Yolanda Lisi and Rosemary Cannata. In 1935 Tancredi, who had been connected with various business concerns engaged in the manufacture of dolls, organized the Happy Doll Company, a corporation, with offices located at 465 West Broadway, New York, New York, for the purpose of producing doll parts and novelties. He proceeded to manage and operate this *255 company by himself as the sole stockholder until the year 1940. On February 29, 1940, Tancredi entered into a written agreement with Lisi, who also had been engaged in the doll business for many years. By the terms of this agreement Lisi was to organize and operate a corporation for the purpose of assembling doll parts into finished products. Tancredi was to continue the operation of Happy Doll, confining it to the manufacture of doll parts. While it was provided that each petitioner would have exclusive management of the company he organized, yet they were to have equal ownership of the stock of both companies. Equal salaries were to be drawn by both men, these salaries to be the joint and several obligation of both corporations, and profits and losses of the two businesses were to be shared equally. Petitioners proceeded to carry out the terms of this agreement. Lisi organized and placed in operation the Public Doll Company, a corporation. The business of Happy Doll and the business of Public Doll were carried on at separate locations under the sole management of Tancredi and Lisi, respectively, though each petitioner received half the stock of both corporations.both businesses *256 were operated as corporations until June 30, 1943. Ownership of the stock of Happy Doll and Public Doll remained exclusively in the hands of petitioners during this period. The net income reported by Happy Doll and Public Doll for the years 1940-1942 was as follows: Happy Doll
Public Doll
1940
$ 1,328.48
$665.00 (loss)
1941
2,159.22
256.91
1942
19,180.27
170.58
On June 30, 1943, the two petitioners entered into a written partnership agreement, wherein they recited the existence of Happy Doll and Public Doll Companies, their desire to suspend corporate operations and to operate their respective businesses as individuals, and their intent to porvide for equal and joint ownership of the individual businesses in a manner as similar as possible to the prior operation of the two corporate enterprises. The parties agreed to discontinue corporate business operations but to maintain the corporations for possible future use. Title to the properties of each business was to be conveyed to the party who previously had operated it. Tancredi was to operate his business under the name of Happy Doll Company and Lisi was to operate his business under the name of Public *257 Doll Company. Each was to operate his business without interference from the other except in the case of gross mismanagement or other unusual circumstances. The parties were to draw equal salaries, to be equalized between the two businesses. It was agreed between petitioners that each held a 50 per cent interest in the business under his particular management and a like interest in the business managed by the other. Profits and losses from the two businesses were to be shared equally. It was agreed that Tancredi would be the sole person to sign and execute instruments on behalf of Happy Doll and Lisi would be the sole person to sign and execute instruments on behalf of Public Doll. The terms of this agreement were carried out by petitioners. No member of the family of either petitioner was given an interest in the partnership. Despite the fact that Happy Doll and Public Doll businesses were being conducted as a partnership after June 30, 1943, the income of each company for 1943 was reported on a corporate return and no partnership return was filed. Happy Doll reported a net income of $4,302.30, while Public Doll reported a net income of $1,015.39. During the period from the formation *258 of Happy Doll in 1935 through the year 1943 Tancredi at all times was in sole charge of its business operations. While all members of his family joined in evening discussions of the affairs of Happy Doll, only certain members actually performed services for the business in these years. Thus Andrew, who was 25 years old in 1943, was employed by his father in a doll business entirely separate from Happy Doll during the years from 1935 to 1942. For his services in assembling doll parts, creating doll styles, and developing new doll parts, he received a small wage. On February 4, 1942, he entered the military service. Tancredi's son Charles, who was 23 years old in 1943, worked in the paint department of Happy Doll only for a short time in 1940 on a parttime basis. He was paid a small wage for these services. Charles, like Andrew, worked for his father in an entirely separate doll business in 1940 and 1941. On February 25, 1942, he entered the military service. Tancredi's son William, who was 19 in 1943, quit school in 1940 and started working at Happy Doll. He was paid a small wage by his father. In 1943 William went to work in a government plant where he was employed until his induction *259 into the armed services in April 1944. Tancredi's daughters, Lillian and Victoria, who were respectively 15 and 11 years old in 1943, were too small to render any services at Happy Doll during the period from its inception through 1943. Tancredi's daughter, Anna Anzolone, who was 27 years old in 1943, worked as a bookkeeper at Happy Doll from 1940 through 1942 and she was paid a small wage for her services. Tancredi's wife, Maria, was not an employee of Happy Doll in the years 1935-1943, but she came down and assisted in painting and dressing dolls both there and at another plant of her husband several times a week in addition to performing her household duties. She received no wage for her services. During the years 1935-1943 any wages earned by members of the Tancredi family, wherever they were employed, were turned over to Tancredi in return for supporting them. The entire family lived at home with petitioner and he provided them with room, board, clothing and a small allowance. Tancredi was free to expend the wages he received as he saw fit, whether in his doll enterprises or otherwise. During the period from the formation of Public Doll in 1940 through the year 1943 petitioner *260 Lisi remained in sole charge of its business operations. While all members of his family discussed the affairs of Public Doll in the evening, only certain members actually performed services for the business in these years. Carmela, Lisi's wife, worked at the Public Doll plant in all years 1940-1943, dressing dolls, pressing their clothes, and performing other similar services. She was paid a regular wage for her services at all times. Lisi's daughter, Madeline, who was 25 in 1943, was also active in the Public Doll business at all times from 1940-1943, and received a small wage for her services. She designed dolls, made patterns, cut the dresses for dolls and made the doll parts. Lisi's daughters, Rosemary Cannata and Yolanda, who were 24 and 17, respectively, in 1943, worked at their father's plant for a short time in 1940, but then on his advice they found employment elsewhere. They helped out at Public Doll on weekends and holidays when the need was great. They received no compensation for their services there, but were on the payroll at their regular places of employment. Lisi's oldest child, Sebastian, worked at Public Doll at all times in this period. His younger brother, *261 Frank, apparently worked at Public Doll at some time, though the nature and duration of the services are uncertain. As in the case of the Tancredis, all the Lisis lived at the family home, where all their needs were provided by Lisi. As head of the family and its provider he received all the wages made by his wife and children, whether earned at Public Doll or otherwise. He used these funds as he saw fit, whether in his doll business or otherwise. For many years both Tancredi and Lisi promised their families that they would be given an interest in the doll business, and their children grew up with the belief that one day they would have a share in it. Subsequent to 1940 the Tancredi children and Lisi children pestered and badgered their fathers, wanting to know when they would be given an interest in the business. Each time the question was raised both Tancredi and Lisi put off their children with promises they would be given an interest in the doll business when the proper time came. The pressure from their children became so intense in December 1943 that petitioners agreed to the idea of each of them forming a subpartnership with members of his own family for conduct of that *262 portion of the Happy Doll-Public Doll businesses he was operating. At Christmas time 1943 Tancredi had a discussion with members of his family with regard to forming a subpartnership with them for the conduct of the Happy Doll business. His wife and children were all present except for Andrew who could not obtain a Christmas furlough. Tancredi promised to enter into a partnership with his family effective January 1, 1944, whereby his wife and children would receive equal portions of half his share of the profits from the Happy Doll-Public Doll partnership. Despite his promise no definite partnership agreement was reached at that time. Tancredi thereafter corresponded with his sons in the Army concerning the proposed partnership. In a similar manner at Christmas time 1943 Lisi called his family together and discussed forming a subpartnership with them for conducting the business of Public Doll. At this meeting he promised to include them in a partnership effective January 1, 1944. The proposed method of sharing profits was the same as that of the Tancredi family. Lisi postponed any final decision on the matter at that time. Tancredi further put off formation of a subpartnership *263 with his family in the Happy Doll business, first when William was inducted into the armed services in April 1944, and then again, when William suddenly got married about a month later. Both events upset him and prevented him from making any definite arrangements. Throughout 1944 his sons in the armed services continually wrote Tancredi asking what had happened to the promised partnership. In October 1944, though none of his sons was home, Tancredi finally decided the time was ripe for the formation of the proposed subpartnership with his family in Happy Doll. He went with Lisi to a lawyer to have partnership agreements drafted for their respective families. The following agreement was executed by certain members of the Tancredi family: "AGREEMENT made and entered into this… day of October, 1944, by and between JOSEPH TANCREDI, part of the first part, LILLIAN TANCREDI, ANNA ANZOLONE and MARIA TANCREDI, parties of the second part, and ANDREW TANCREDI, CHARLES TANCREDI and WILLIAM TANCREDI, parties of the third part. "WITNESSETH: "WHEREAS, a written limited partnership agreement has been entered into by and among the parties of the first and second part for the sharing of profits *264 and losses and participation in the business of Happy Doll Co., and "WHEREAS, the parties of the first and second part desire to set forth their understanding with the parties of the third part concerning the sharing of profits and losses realized from the business of Happy Doll Co., "NOW, THEREFORE, IT IS AGREED AS FOLLOWS: "1. For a valuable consideration, the parties of the second part agree to share any and all profits realized from the business of the Happy Doll Co. with the parties of the third part equally so that each of the parties of the second and third part shall receive equal shares thereof and the losses shall be borne in the same proportion. "2. It is mutually agreed that when distribution of any profits, if any, are made, the share due to the parties of the third part may be paid to them directly and the parties of the second part consent thereto. "3. It is mutually agreed that this agreement shall continue and be in full force and effect for as long as the limited partnership agreement entered into between the parties of the first and second part continues. "4. It is agreed that this agreement may be signed separately by the parties of the third part and *265 shall be deemed to be of the same force and effect as if all the signatures were continained on one agreement. "IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals on the day and in the year first above written. (Signed) Joseph Tancredi Party of the First Part (Signed) Lillian Tancredi (Signed) Anna Anzolone (Signed) Maria Tancredi Parties of the Second Part (Signed) Andrew Tancredi Parties of the Third Part" No prior written limited partnership agreement had been entered into by members of the Tancredi family. Andrew placed his signature on the agreement when he returned home on a furlough in November 1944. William and Charles never signed any partnership instrument. It was the understanding of Maria, Lillian, Anna, Andrew, Charles and William that by the terms of the October 1944 partnership agreement they had an equal share in 50 per cent of Tancredi's half interest in the Happy Doll-Public Doll partnership. They further understood that he was to have the first $25,000 of profits from the Happy Doll-Public Doll partnership to which his interest entitled him and all profits above that amount were to be equally divided among them. Members of *266 Tancredi's family did not make any contribution of capital to the Happy Doll business at the time the family subpartnership was formed or any other time. At the same time Lisi entered into a written subpartnership agreement with certain members of his family, namely, Carmela, Madeline, Rosemary, Yolanda and Sebastian, for the conduct of the business of Public Doll. It was the understanding of Carmela, Madeline, Rosemary, Yolanda and Sebastian that by virtue of this subpartnership with Lisi in the operation of Public Doll, they had an equal share in 50 per cent of his half interest in the Happy Doll-Public Doll partnership. They further understood that he was to have the first $25,000 of profits from the Happy Doll-Public Doll partnership to which his interest entitled him and any profits above that amount were to be equally divided among them. Members of the Lisi family did not make any contribution of capital to Public Doll at the time this family subpartnership was formed or any other time. On October 14, 1944, Tancredi and Lisi entered into the following written agreement concerning their respective interests in Happy Doll and Public Doll: "AGREEMENT, made and entered into *267 this 14th day of October, 1944, by and between HAPPY DOLL CO., doing business at 465 West Broadway, Borough of Manhattan, City of New York (hereinafter referred to as the party of the first part), and PUBLIC DOLL CO., doing business at 141 Wooster Street, Borough of Manhattan, City of New York (hereinafter referred to as the party of the second part). "WITNESSETH: "WHEREAS, the above two firms are desirous of setting forth their understanding concerning their investments, interests and losses in which they are to participate, as well as for other contingencies which may arise, "NOW, THEREFORE, IT IS AGREED AS FOLLOWS: "1. It is mutually agreed that each of the parties hereto are [is] to be deemed to have a one-half interest in the capital of the respective partnerships. "2. It is further mutually agreed that each of the parties shall be entitled to a fifty (50%) per cent share in all the profits arising out of the conduct of the respective businesses and the losses, if any, shall be borne by the parties hereto in the same proportion. "3. It is agreed that this agreement is to continue for as long as the respective businesses continue in operation. "4. Joseph Tancredi, *268 individually and as partner, conducting business under the name of Happy Doll Co., and Charles Lisi, individually and as partner, conducting business under the name of Public Doll Co., each agree to devote their whole time and attention to the business which each is in charge of and agree not to engage either directly or indirectly in the same business or any other business or occupation during the continuance of this agreement. "5. It is mutually agreed that both Joseph Tancredi and Charles Lisi are each to be entitled to draw the sum of Two Hundred ($200.00) Dollars per week as and for their salary during the continuance of this agreement. "6. Full, just, true and accurate accounts shall be kept of all matters relating to the respective businesses and the books containing such accounts shall, at all times, be open to the inspection of the other party hereto. "7. In the event either of the general partners desires to terminate this arrangement, he is to give the other party notice by registered mail advising him of his intention to terminate the same and such other party shall then have the opportunity to purchase the interest of the retiring partner on the basis of book value *269 as arrived at by the accountant, and in the event such party desires to purchase the same he shall be privileged to pay therefor within a period of six (6) months in three (3) equal payments; first payment to be made upon the agreement to purchase. Such agreement to purchase must be exercised within twenty (20) days after the offer is made. "8. In the event of the death of either of the general partners, the surviving partner is to have an option to purchase the interest of the deceased general partner on the same basis as provided in paragraph '7.' "9. In the event either of the general partners do not desire to exercise the option given to him by paragraph '7' and paragraph '8,' then, and in such event, the respective businesses shall be liquidated and after paying all obligations the total assets thereof shall be distributed in accordance with this agreement. "10. It is mutually agreed that anything herein to the contrary notwithstanding, that on any matters which are provided for in the immediate prior agreement entered into between the parties herein which give greater rights to either of the parties shall be deemed incorporated herein and made part hereof. In all other *270 respects this agreement shall be deemed as superseding the prior agreement of the parties. "IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals on the day and in the year first above written. HAPPY DOLL CO. (Signed) By Joseph Tancredi (LS) PUBLIC DOLL CO. (Signed) By Charles Lisi (LS)" During the entire year 1944, as was true prior thereto, the business of Happy Doll was managed, controlled, and operated solely by Tancredi. No change was made in the management of the business in that year. He also wrote all the checks for the business. Furthermore, while his wife and daughters continued to discuss the doll business with him at home in the evenings, no member of his family performed significant services at Happy Doll in 1944. His wife Maria continued to help several times a week but received no salary therefor. Lillian worked at Happy Doll for a short time that year, but then got a job with Aetna Life Insurance Company. Victoria was too young to perform any services in the doll business. Anna Anzolone was married in 1944 and did not work at all in that year. Tancredi's boys, Andrew, Charles and William, were all in the armed service during the years *271 1944-1946, and while they kept in touch with the doll business by correspondence, they performed no services during this period. Similarly during all of 1944, as before, the business of Public Doll was managed, controlled and operated solely by Lisi. He likewise wrote all checks for the business. No change occurred in the management of the business in that year. No additional services were contributed by members of his family. His wife, Carmela, his daughter, Madeline, and his son, Sebastian, continued to perform the same services at Public Doll in 1944 which they had done previously. For their work in that year, Carmela, Madeline and Sebastian received total wages of $1,366.69, $1,665.39, and $606.91, respectively. In 1944 Yolanda and Rosemary Cannata worked full time in offices having no connection with their father's business and were available only on weekends and holdiays when needed. Tancredi and Lisi informed their accountants that the Happy Doll and Public Doll businesses would be conducted as a partnership as of January 1, 1944. The accountants were instructed that each petitioner would receive $25,000 as his share of the profits, and any remaining profits would be divided *272 among their respective families. Since Happy Doll and Public Doll were run as two separate businesses with separate sets of books kept at each plant, a private ledger was set up to reflect the combined businesses in March or April 1944. The ledger for Happy Doll continued to show only one capital account and drawings only by Tancredi during the year 1944. The ledger for Public Doll likewise only showed one capital account and withdrawals only by Lisi in 1944. In setting up the private ledger the accountants added together the balances existing on the Happy Doll and Public Doll capital accounts on January 1, 1944, and set the total up as the total net worth of Happy Doll-Public Doll partnership. Capital accounts were set up on the private ledger in 1944 for the following persons in the following amounts: Charles Lisi
Jan. 1, 1944
$ 5,026.31
Dec. 31, 1944
30,026.31
Sebastian Lisi
Jan. 1, 1944
2,000.00
Madeline Lisi
Jan. 1, 1944
1,000.00
Rose Lisi
Jan. 1, 1944
1,000.00
Yolanda Lisi
Jan. 1, 1944
1,000.00
Carmela Lisi
Jan. 1, 1944
1,000.00
Joseph Tancredi
Jan. 1, 1944
5,026.32
Dec. 31, 1944
30,026.32
Lillian Tancredi
Jan. 1, 1944
2,000.00
Anna Anzolone
Jan. 1, 1944
2,000.00
Maria Tancredi
(transferred from
Anna Anzolone
Dec. 31, 1944)
2,000.00
*273 No capital accounts were set up for Tancredi's three boys at any time. Anna Anzolone's capital account was closed out on December 31, 1944, with the notation that it was transferred to Maria Tancredi's capital account per agreement. Maria Tancredi's capital account reflected this transfer on December 31, 1944. Drawing accounts were set up on the private ledger for the same persons listed above and also for Andrew, Charles and William Tancredit. Closing entries made as of December 31, 1944, showed the following drawings during the year which were designated as "salaries": Carmela Lisi
$ 1,366.69
Madeline Lisi
1,665.39
Sebastian Lisi
606.91
Charles Lisi
25,000.00
Joseph Tancredi
25,000.00
Net profits for Happy Doll and Public Doll for 1944 of $58,100.09 and $55,634.01, respectively, were entered in the private ledger at the close of the year. The following closing entries were made in the private ledger as of December 31, 1944: Profit and loss
$113,734.10
Charles Lisi
Capital
$25,000.00
Joseph Tancredi
Capital
25,000.00
Sebastian Lisi
Drawing
10,622.76
Mdaeline Lisi
Drawing
6,673.32
Rose Lisi
Drawing
5,007.93
Yolanda Lisi
Drawing
5,007.93
Carmela Lisi
Drawing
6,374.61
Lillian Tancredi
Drawing
10,015.85
Anna Anzolone
Drawing
10,015.85
Maria Tancredi
Drawing
10,015.85
To set up distributions of profits for year.
*274 The names of Andrew, Charles and William Tancredi were absent from these entries. The above credits to the individual accounts of the above members of the Tancredi and Lisi families totaled $113,734.10. The drawing accounts of Tancredi's sons, Andrew, Charles and William, appearing in the private ledger, were credited with $5,007.92, $5,007.93 and $5,007.93, respectively, on December 31, 1944, and these amounts were designated as profits. While $10,015.85 of profits were credited to Anna Anzolone's drawing account as of December 31, 1944, yet on the same day her drawing account was debited in the same amount, with the notation that it was transferred to Maria Tancredi's account. This amount was never credited to Maria Tancredi's drawing account. The drawing account of Tancredi's daughter, Lillian, was credited with profits in the amount of $10,015.85 on December 31, 1944, but on the same day it was debited in the amount of $5,007.93. The 1944 profits credited to the drawing accounts of Tancredi's three boys on December 31, 1944, are equal in amount to those shown as their distributive shares of the Happy Doll-Public Doll partnership income on the partnership return for 1944, and *275 the total of these three amounts equals the total profits withdrawn from the drawing accounts of Anna Anzolone and Lillian on December 31, 1944. Profits were credited to and withdrawals charged to the drawing accounts of Tancredi's wife and four children, namely, Maria, Andrew, Charles, William and Lillian, in 1945 and 1946. Similarly the drawing accounts of Lisi's wife and four children, namely, Carmela, Rosemary, Madeline, Yolanda and Sebastian, reflected receipt of profits and withdrawals in 1945 and 1946. It is uncertain whether petitioners' wives and children received any distributions of partnership profits in the years 1944-1946. Lisi filed a partnership return on behalf of Happy Doll and Public Doll for 1944. It reported net income of $104,254.07 for the combined businesses and capital gains of $9,480.03. The following distribution of profits was shown: Ordinary Net
Net Capital
Net Capital
Name of Partner
Income
Gain 100%
Gain 50%
Joseph Tancredi
$25,000.00
15 Van Sicklin St., Brooklyn, N. Y.
Charles Lisi
25,000.00
3455 Knox Place, Bronx, N. Y.
Carmela Lisi (Includes salary $1,366.69)
5,584.61
790.00
395.00
3455 Knox Place, Bronx, N. Y.
Rose M. Lisi
4,217.93
790.00
395.00
3455 Knox Place, Bronx, N. Y.
Sebastian Lisi (Includes salary $606.91)
9,042.75
1,580.01
790.01
3455 Knox Place, Bronx, N. Y.
Madeline Lisi (Includes salary $1,665.39)
5,883.31
790.01
395.00
3455 Knox Place, Bronx, N. Y.
Yolanda Lisi
4,217.93
790.00
395.00
3455 Knox Place, Bronx, N. Y.
Maria Tancredi
8,435.84
1,580.00
790.00
15 Van Sicklin St., Brooklyn, N. Y.
Lillian Tancredi
4,217.93
790.00
395.00
15 Van Sicklin St., Brooklyn, N. Y.
Charles Tancredi
4,217.93
790.00
395.00
15 Van Sicklin St., Brooklyn, N. Y.
Andrew Tancredi
4,217.91
790.01
395.01
15 Van Sicklin St., Brooklyn, N. Y.
William Tancredi
4,217.93
790.00
395.00
15 Van Sicklin St., Brooklyn, N. Y.
TOTALS
$104,254.07
$9,480.03
$4,740.02
(A) 9,480.03
(A)
$113,734.10
*276 In his notice of deficiency sent to Tancredi, respondent determined that his wife and four children, namely, Maria, Lillian, Andrew, Charles and William, were not bona fide partners in the Happy Doll and Public Doll partnership and that the amounts shown on the 1944 partnership return as having been distributed to them were properly includible in his taxable income. In his notice of deficiency sent to Lisi, respondent determined that his wife and four children, namely, Carmela, Rosemary, Madeline, Yolanda and Sebastian, were not bona fide partners in the Happy Doll and Public Doll partnership, and that the amounts shown on the 1944 partnership return as having been distributed to them, less salaries included therein, were properly includible in his taxable income. Tancredi and certain members of his family, specifically Maria, Lillian, Andrew, Charles and William, did not intend to join together as partners in the present conduct of the Happy Doll business during 1944. Lisi and certain members of his family, specifically Carmela, Rosemary, Madeline, Yolanda, and Sebastian, did not intend to join together as partners in the present conduct of the Public Doll business during *277 1944. Opinion HILL, Judge: The basic question for our determination is whether portions of the net income of the Happy Doll-Public Doll partnership in 1944 which were reported as distributed to the wife and four children of Tancredi and to the wife and four children of Lisi constituted income to them, or to the respective heads of the two families in 1944. It is apparently the contention of petitioners that by virtue of an oral agreement between members of the Tancredi family and an oral agreement between members of the Lisi family in December 1943, both of which were reduced to writing in October 1944, the wife and four children of Tancredi, namely, Maria, Lillian, Andrew, Charles and William, and the wife and four children of Lisi, namely, Carmela, Rosemary, Madeline, Yolanda and Sebastian, joined together with them in one partnership for the conduct of the Happy Doll-Public Doll businesses, effective January 1, 1944. Petitioners assert that the above enumerated members of their respective families were valid partners in the Happy Doll-Public Doll partnership during the year 1944 under the tests laid down in , so that the *278 amounts reported on the Happy Doll-Public Doll partnership return for 1944 as distributed to them should be recognized as income to them. At the outset we must observe that the confusion and contradiction which pervades the testimony and written instruments submitted by petitioners at the hearing make it difficult to reconstruct with exactiude the business relationships which existed within and between the Tancredi and Lisi families in 1944. Nevertheless, the evidence persuades us first that the wives and children of these two families entered into no partnership agreements with petitioners until October 1944. Secondly, it convinces us that such agreements provided for a Tancredi family subpartnership for the conduct of the Happy Doll business and a Lisi family subpartnership for the conduct of the Public Doll business, both subpartnerships operating under the principal partnership between petitioners for the conduct of the Happy Doll and Public Doll businesses. Thus in regard to the first point, while the Tancredis testified their family entered into a binding oral partnership agreement in December 1943 and the Lisis testified their family entered into a binding oral partnership *279 agreement at the same time, yet the credibility of these statements is offset by the vague and contradictory nature of their testimony as to the terms of these agreements and by testimony on their part that any final decision to enter into a family partnership was postponed by each of the petitioners until October 1944. The latter testimony is supported by the failure of the October 1944 written partnership agreement of the Tancredis to refer to any prior oral agreement. It only mentions a prior written partnership agreement whose existence even petitioners deny. Several facts effectively demonstrate that in October 1944 the Tancredis intended only to form a subpartnership for the conduct of the Happy Doll business and the Lisis intended only to form a subpartnership for the conduct of the Public Doll business despite bookkeeping entries to the contrary. First, the great preponderance of the testimony by both Tancredis and Lisis point to this conclusion. The clearest statement that the wives and children of the two families were not united in one partnership comes from Madeline Lisi. She makes the following replies to questions at page 138 of the record: "Q. As far as you know, *280 you were not a partner of the Tancredis, were you, yourself? Your family wasn't - each one of you were partners with your own father; is that what you are claiming? "A. That is right. "Q. You and the Tancredis were not all mixed in together. "A. No, because one was in the Happy Doll and one was in the Public Doll." Secondly, the October 14, 1944, agreement between petitioners, confirming the continuation of their partnership in the conduct of the Happy Doll and Public Doll businesses, makes no mention of members of their families as new partners. On the contrary it provides, as had the June 1943 agreement, that each petitioner owns one-half of the two businesses and is entitled to 50 per cent of the profits therefrom. Finally, while the written partnership agreement of the Lisis in October 1944 was not put in evidence, the written agreement of the Tancredis at that time expressly states that it is formed for the conduct of the Happy Doll business. It is clear that throughout 1944 petitioners were the only members of the Happy Doll-Public Doll partnership, despite the partnership arrangements they entered into with their respective families in October. Thus, whether portions *281 of Tancredi's and Lisi's half shares of the net profits of the Happy Doll-Public Doll partnership for 1944 can be recognized as income to certain members of their respective families depends on the validity taxwise of the Tancredi subpartnership in Happy Doll and the validity taxwise of the Lisi subpartnership in Public Doll. We must determine whether Tancredi and certain members of his family, namely, Maria, Lillian, Andrew, Charles and William, really and truly intended to join together as partners in the present conduct of the Happy Doll business in 1944. We must further determine whether Lisi and certain members of his family, namely, Carmela, Rosemary, Madeline, Yolanda and Sebastian, really and truly intended to join together as partners in the present conduct of the Public Doll business in 1944. Turning first to the Tancredi subpartnership, we find it significant that the agreement of October 1944 is most vague and general in its terms and recites in substance only that profits and losses will be shared equally among Tancredi's wife and children. None of the detailed clauses usually found in partnership agreements, setting *282 forth such matters as the proportionate interests of each member in the partnership, the specific proportion of the profits to which each member is entitled, the manner in which the business is to be conducted, the sale of partnership interests, and the procedures to be followed in the event of the retirement or death of one of the partners, are included in this agreement. While Tancredi's wife and children apparently had an understanding that they shared equally 50 percent of his half interest in the Happy Doll-Public Doll partnership, and were entitled to share equally in all profits he was entitled to from that partnership above $25,000, yet there is no evidence they ever reached any understanding as to other partnership matters. We note there is no adequate evidence that Charles and William ever signed this or any other partnership instrument, and that Andrew signed the agreement late in November. It is also significant that while Anna Anzolone signed the partnership instrument, her interest was transferred to her mother at the close of 1944 without any adequate explanation. No reason is given why Victoria was excluded from the subpartnership agreement in contradiction to her father's *283 earlier promise to take all his family into the partnership. All these facts cast doubt on the genuineness of the subpartnership agreement. More important, no business purpose can be found for the formation of the partnership in October 1944. The business of Happy Doll was conducted in just the same manner as before the subpartnership was formed. All three boys had been in the armed forces since April 1944 and thus rendered no services after October 1944. Lillian continued to work elsewhere than at Happy Doll for the rest of the year. Maria could get to the plant only a few days a week, and her efforts were in the nature of loyal aid that a wife gives her husband in his business rather than the services of a business partner. There is nothing in the evidence to show that Tancredi even contemplated his family would render any significant, vital services to the Happy Doll business. Moreover, it is clear that Tancredi's family never contributed any capital to the Happy Doll enterprise nor was it expected that they would do so. Petitioners do argue that because the Tancredi children habitually turned over their wages to their father and he often invested a portion of these funds in *284 the Happy Doll business, the children thereby made a contribution of capital. This contention is effectively refuted by the unanimous testimony of the Tancredis that the whole family lived at home and the wages were turned over to Tancredi in return for supporting them. Furthermore it is clear that he was free to expend the money in any manner he saw fit. It is also plain that Tancredi's children rendered him no aid in the management of the affairs of Happy Doll for the duration of 1944. He remained in absolute and sole control of the business operations, as had always been the case. There is nothing to indicate that any vital contribution was made to the management of the enterprise in 1944 by the business discussions between Tancredi and his wife and daughters or by the correspondence Tancredi conducted with his boys. Petitioners argue that the private ledger of the combined businesses of Happy Doll and Public Doll lends support to their contention that members of the Tancredi family were bona fide partners. But the entries in this ledger set out at length in the findings are not only full of unexplained inconsistencies but are in conflict both with the subpartnership agreement *285 and the Happy Doll-Public Doll partnership tax return. Therefore we can place but little reliance on this ledger. Enjoyment of the fruits of the partnership by its members is one of the tests of a valid partnership for tax purposes which the Supreme Court emphasized in the Culbertson case. Applying that test, we note that the drawing accounts of the Tancredi family in the private ledger show withdrawals in 1945 and 1946. We also note that members of the family testified that their shares of the Happy Doll-Public Doll partnership profits for 1944 were made available to them by Tancredi either by checks or, in the case of the boys, by deposits in trust accounts for them. Yet such testimony is so vague and the supporting evidence so negligible that we are unable to find as a fact that Tancredi's wife and children ever enjoyed any of the fruits of the partnership. Turning to the subpartnership formed by the Lisis in October 1944, we note that the written partnership agreement was not placed in evidence. While Lisi's wife and children had the same understanding of their respective partnership interests and shares in profits as Tancredi's wife and children did, yet we again find it significant *286 that Lisi's family had no mutual understanding concerning the conduct of partnership affairs outside the division of profits. No reason is given why Frank was excluded from the subpartnership in contradiction to his father's earlier promise to take all his family into the partnership. All these facts reflect on the genuineness of the subpartnership agreement. As in the case of the Tancredis we are unable to find that formation of the Lisi subpartnership in October 1944 was motivated by any business purpose. No significant change occurred in the conduct of the Public Doll business as a consequence. It is true that Carmela, Madeline and Sebastian worked regularly at Public Doll during the remainder of the year, but there is no evidence that the nature of their services changed in any manner from what they had done previously. They remained employees of Lisi, receiving a regular wage for their work. Yolanda and Rosemary continued to hold full-time outside jobs, and could only help at Public Doll on weekends and holidays when needed. Thus it is plain that Lisi did not contemplate that any additional services would be contributed to the operation of Public Doll by the formation of the *287 partnership. No capital was ever contributed to the enterprise by Lisi's wife and children. Petitioners make the same argument as we noted in the case of the Tancredis, that the wages turned over to Lisi as head of the household constituted the contribution of capital. Again the evidence is clear that these wages were turned over to Lisi by his family in return for supporting them at home, and that he was free to use the money for any purpose he saw fit. Finally it is evident that Lisi contemplated no help from his family in the management of Public Doll operations. After the partnership was formed, just as before, he remained in sole and absolute control of the conduct of all facets of the business. There is no intimation in the evidence that the business discussions held by the Lisi family in the evenings contributed in any vital way to the success of Public Doll. The contention is made by petitioners that the private ledger of the Happy Doll-Public Doll reflects the partnership standing of the Lisi family, and they further contend that in 1945 Lisi's wife and four children received from him shares of the Happy Doll-Public Doll profits for 1944. Our conclusions in regard to these *288 contentions are the same as those we discussed in connection with the Tancredi subpartnership. In view of all the above circumstances in regard to the Tancredi and Lisi subpartnerships it is apparent that petitioners formed them simply to divide up among members of their respective families the income they earned as partners in the Happy Doll and Public Doll businesses. In October 1944 they were able to see that profits from these two businesses would far exceed anything experienced in earlier years, and these family subpartnerships were undertaken as the most expedient devise for reducing the higher taxes which would result from the unprecedented business success in 1944. In actuality no change occurred in the economic relationship of the members of the Tancredi or Lisi families after the formation of the subpartnerships. We therefore found as a fact and now hold that Tancredi and his wife and children, namely, Maria, Lillian, Andrew, Charles and William, did not intend to join together as partners in the present conduct of the Happy Doll business during 1944. We further found as a fact and now hold that Lisi and his wife and children, namely, Carmela, Madeline, Rosemary, Yolanda *289 and Sebastian, did not intend to join together as partners in the present conduct of the Public Doll business during 1944. We thus hold that the Tancredi and Lisi subpartnerships were not valid for tax purposes in 1944, and respondent's contention on this issue should be sustained. Decisions will be entered under Rule 50.